## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| Marcus A. Helt, Receiver for Sethi Petroleum, LLC and Sameer P. Sethi,<br><br>Plaintiff,<br><br>v.<br><br>Praveen Sethi,<br><br>Defendant. | § § § § § § § § § § § § § § § |

**Case No.:** 4:18-cv-00436

**Judge Mazzant**

**Jury Demand**

### RECEIVER'S COMPLAINT AGAINST PRAVEEN SETHI TO
### (A) RECOVER AVOIDABLE TRANSFERS,
### (B) OBTAIN JUDGMENT FOR VARIOUS CAUSES OF
### ACTION, AND (C) IMPOSE CONSTRUCTIVE TRUST

Marcus A. Helt, the Court-appointed receiver for Sethi Petroleum, LLC and Sameer P. Sethi, files this *Receiver's Complaint Against Praveen Sethi to (A) Recover Avoidable Transfers, (B) Obtain Judgment for Various Causes of Action, and (C) Impose Constructive Trust* (the "**Complaint**") against Defendant Praveen Sethi, and in support thereof, respectfully states and alleges as follows:

### I.
### NATURE OF THE ACTION

1.      Among other things, in this lawsuit Marcus A. Helt, the Court-appointed receiver for Sethi Petroleum, LLC (the "**Receiver**"), seeks to:

(a)      avoid and recover transfers of Sethi Petroleum LLC's interest in property from Defendant Praveen Sethi, any person or entity for whose benefit such transfers were made, and any subsequent transferee, subject to further discovery and proof, all fraudulent

transfers made pursuant to the Texas Uniform Fraudulent Transfer Act[1];

(b)     obtain judgment against Praveen Sethi resulting from his acts and omissions under various causes of actions under Texas law, including breach of fiduciary duty, fraud, and fraud by nondisclosure;

(c)     impose a constructive trust on all assets of Praveen Sethi and assets of entities owned or controlled by Praveen Sethi that have received funds traceable to the Receivership Estate; and

(d)     obtain other relief as the Court deems just and equitable.

## II.
## JURISDICTION AND VENUE

2.      This Complaint relates to the lawsuit currently pending before the United States District Court for the Eastern District of Texas, Sherman Division, between the Securities and Exchange Commission (the "**SEC**"), as plaintiff, and Sethi Petroleum, LLC and Sameer P. Sethi (collectively, the "**Receivership Defendants**"), as defendants; case number 4:15-cv-00338-ALM (the "**SEC Case**"). This lawsuit is an action to recover avoidable transfers and recover judgment with respect to Praveen Sethi and his entities, which participated in a fraudulent scheme to defraud investors and received assets traceable to the Receivership Defendants. All such actions are required to be filed in this Court pursuant to the *Order Appointing Receiver* (the "**Receivership Order**") entered on May 14, 2015 in the SEC Case.

3.      This is a complaint for causes of action under section 24.001 *et seq*. of the Texas Business and Commerce Code, as well as for causes of action under Texas law for breach of fiduciary duty, fraud, and fraud by nondisclosure. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. 1367(a) because the claims forming the

---

[1] References to the Texas Uniform Fraudulent Transfer Act ("**TUFTA**") shall mean TEX. BUS. & COM. CODE ANN. §§ 24.001 *et seq*.

basis of this Complaint are so related to claims in the SEC Case that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims forming the basis of this action occurred in this judicial district.

## III.
## THE PARTIES

5.      Sethi Petroleum, LLC a/k/a Sethi Financial Group, Inc. and Sethi Oil & Gas, Inc. ("**Sethi Petroleum**") is a limited liability company organized and existing under the laws of the State of Texas, with a principal place of business located at 101 E. Park Boulevard, Suite 755, Plano, TX 75074.

6.      Upon information and belief, Defendant Praveen Sethi ("**P. Sethi**") is an individual natural person residing in Murphy, Texas, served as a corporate director and/or officer of Sethi Petroleum, and may be served with process in this State at P. Sethi's primary residence located at 427 Walnut Drive, Murphy, Texas 75094.

7.      On May 14, 2015 (the "**Effective Date**"), the U.S. District Court for the Eastern District of Texas issued the Receivership Order in the SEC Case, appointing Marcus A. Helt as the receiver over all of the Receivership Defendants' assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to Sethi Petroleum) (collectively, the "**Receivership Assets**") and all books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices, and other informational resources of or in possession of the Receivership Defendants

(collectively, the "**Receivership Records**" and together with the Receiver Assets, the "**Receivership Estate**").

8.     The Receivership Estate over which the Receiver serves as receiver includes each of the joint ventures, contemplated joint ventures, entities, and contemplated entities listed on **Exhibit A** hereto, each of which operated under the name of Sethi Petroleum, LLC.

9.     Pursuant to the Receivership Order, the Receiver is authorized to institute actions or proceedings to recover judgment with respect to persons or entities who received assets traceable to the Receivership Estate. The Receiver is vested with the authority and right to prosecute and settle all Receivership Estate causes of action, including the causes of action asserted in this Complaint.

## IV.
## FACTUAL BACKGROUND

### A.     Background

10.     On May 14, 2015, the SEC filed the SEC Case against the Receivership Defendants, alleging, among other things, that the Receivership Defendants offered and sold securities in violation of the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

11.     From at least 2011 through May 2015, the Receivership Defendants and their parents, successors, affiliates, subsidiaries, and the Fraudulent Investment Vehicles (defined below), including by and through those entities listed on **Exhibit A** hereto (collectively, the "**Sethi Enterprise**"), carried on a fraudulent scheme and made materially false and misleading statements and omissions to potential and actual investors

of the Sethi Enterprise in order to offer and sell securities in several purported "joint ventures,"[2] oil and gas investment programs owned by Sethi Petroleum. Upon information and belief, the so-called joint ventures include, but are not limited to, the following named entities:

- Bakken Patriot 3-4 Joint Venture

- Bakken Patriot 8-5 Joint Venture

- Bakken Dragon 1-12 Joint Venture

- FD LVII

- Sethi – North Dakota Drilling Fund – LVIII Joint Venture

- Patriot Drilling Program LXI Joint Venture

- Ragel White Joint Venture

- Ragel White 1-3 Joint Venture

- SAM 1&2 Joint Venture

- SAM 3&4 Joint Venture

During the prosecution of this action, through discovery or otherwise, the Receiver may discover other, similar such purported joint ventures by which the Sethi Enterprise carried on the fraudulent scheme indicated above (the "**Unknown Investment Vehicles**"), or may discover other names by which the foregoing purported joint ventures are identified. The foregoing purported "joint ventures," along with any Unknown

---

[2] Sethi Petroleum and Sameer P. Sethi have described the entities used to carry on the fraudulent scheme as "joint ventures." It is presently unknown whether these entities constitute joint ventures as legally-recognized enterprises. Throughout this Complaint, the Receiver refers to such entities as "investment vehicles," and does not make any representations or admissions regarding whether or not the entities constitute joint ventures as legally-recognized entities. Sethi Petroleum and/or Sameer P. Sethi used the Fraudulent Investment Vehicles (defined below) to perpetuate the fraudulent scheme or enterprise.

Investment Vehicles are collectively referred to herein as the "**Fraudulent Investment Vehicles**."

12.     By and through the Fraudulent Investment Vehicles, the Sethi Enterprise carried on a fraudulent scheme to acquire funds of investors and potential investors. The Receivership Defendants raised approximately $13 million from approximately 300 investors (the "**Investors**") located in roughly 39 states by making certain misrepresentations to Investors and potential investors regarding the Sethi Enterprise. The Sethi Enterprise offered Investors positions in the Fraudulent Investment Vehicles, representing that Investors would receive returns from oil and gas revenues and tax benefits from oil and gas exploration and production activities.

13.     To induce the Investors to transfer funds to the Sethi Enterprise, the Sethi Enterprise misrepresented its history and experience, the identities of Sethi Petroleum's partners, the use of Investors' funds, and historical and expected returns, among other things.

14.     To obtain new Investors, telemarketing employees of the Sethi Enterprise first "cold called" potential Investors. Telemarketer employees placed calls from a call center located in Richardson, Texas leased by Sethi Petroleum. The telemarketer employees were expected to cold call at least 150 prospective Investors per day.

15.     The telemarketers misrepresented the returns that should be expected by Investors by making materially false and misleading statements, such as:

> *"Because of the current market conditions our investors are seeing (over 40%/incredible) returns and are capitalizing on some excellent tax benefits."*

*"Believe it or not, in some of our past projects we have even gotten our investors 40% return in less than 6 months' time!"*

*"We currently are in the process of funding a $1.6 million oil well in North Texas and are offering prospective partners an investment opportunity that will yield (an excess of/over) 40% annually/4 to 1 on there [sic] money) so they may also benefit from this program."*

*"Would you be willing to take a look at a [sic] Oil and Gas opportunity that will yield you over 90% return annually?"*

*"Well, let me ask you this: if I could show you a program that can quite possibly show a 120% annual return after tax benefits, would you be willing to take a look?"*

16.    The telemarketers then followed up the phone call (or calls) by sending a potential Investor an offering memorandum containing a self-addressed envelope for the Investor to send a check back to the Sethi Enterprise via FedEX, UPS or other common carrier.

17.    The offering memoranda sent to potential Investors also contained materially false and misleading statements.  Such misrepresentations included how the Sethi Enterprise intended to use the Investors' money.  The misrepresentation was knowing, material, and deliberate.  The misrepresentation was made with the intention that Investors would rely on that misrepresentation and invest money with the Sethi Enterprise.  Investors did rely on those misrepresentations and sustained, collectively, millions of dollars of financial injury as a direct result.

18.    Upon information and belief, the offering memoranda represented that 75% or 80% of total money invested by Investors in a particular Fraudulent Investment Vehicle would be spent on the acquisition and development of mineral interests, and 20% or 25% of the total money invested would be retained by the Sethi Enterprise as a one-time management fee.

19.     Upon information and belief, the offering memoranda represented that the funds invested would be used to acquire interests in the "Prospect Wells" that were the subject of the particular Fraudulent Investment Vehicle and discussed in the offering memorandum.

20.     In reality, however, money provided by Investors to the Sethi Enterprise for purposes of investing in a particular Fraudulent Investment Vehicle usually was immediately commingled with funds of other Investors intended for other Fraudulent Investment Vehicles. Instead of using the Investors' funds to acquire mineral interests, the Sethi Enterprise used the majority of the Investors' funds to pay inflated overhead and insiders of the Sethi Enterprise. Funds invested by Investors were frequently commingled and consolidated into accounts owned by Sethi Petroleum, LLC, Sethi Financial Group, Inc., Sethi Oil & Gas Company, and/or Sethi Operating Company, and frequently moved between accounts in the names of individual Fraudulent Investment Vehicles.  The Sethi Enterprise did not keep a record or tracking of inter-company or inter-Fraudulent Investment Vehicle transfers.

21.     The various means employed by the Sethi Enterprise described above were designed to deceive Investors into making payments to the Sethi Enterprise. Unfortunately for Investors, the fraudulent design worked and, in total, the Investors made approximately $13 million in payments to the Sethi Enterprise.

22.     As Investors became increasingly frustrated with the lack of returns on their investments, those Investors called the Sethi Enterprise.  Unfortunately, the Sethi Enterprise was the only source of information available to the Investors on how their investments were being spent.  The Sethi Enterprise intentionally misled Investors or limited the information that could be disclosed to those Investors in order to maintain the façade of a legitimate enterprise.  The individuals working for the Sethi Enterprise knew that they had a duty to

disclose how the Investors' money was being spent.  Yet, the Sethi Enterprise intentionally withheld such material information from Investors to avoid those Investors taking legal action against the Sethi Enterprise.  As a result, the fraudulent scheme of the Sethi Enterprise avoided detection for a number of years.  During that time, new Investors continued to be deceived into investing money with the Sethi Enterprise and the Investors' money continued to be squandered and used for purposes other than as represented to the Investors.

23.     Upon information and belief, the Sethi Enterprise raised more than $13 million of Investor money through the above-described practices.  Rather than spending 75-80% of money raised on the acquisition and development of mineral interests, less than $3 million (representing less than 25% of funds raised) was actually spent on the acquisition and development of mineral interests.

24.     Upon information and belief, of the approximately $13 million of Investor money obtained by the Sethi Enterprise, approximately:

    a)  $1,500,000, or 11.5%, was distributed to insiders of the Sethi Enterprise, or affiliates of or controlled by the Sethi Enterprise;

    b)  $2,000,000, or 16%, was applied toward credit card balances of the Sethi Enterprise, insiders of the Sethi Enterprise, or affiliates of or controlled by the Sethi Enterprise;

    c)  $6,000,000, or 47%, was distributed as payroll, overhead expenses, or rent of the Sethi Enterprise;

    d)  $3,000,000, or 23%, was spent on the acquisition of mineral interests;

    e)  $300,000, or 2.5%, was unable to be categorized.

25.     The operations of the Sethi Enterprise constitute a single fraudulent scheme or enterprise. To persuade Investors to transfer funds to the Sethi Enterprise, the Sethi

Enterprise engaged in a practice and course of business of making untrue statements of material facts and material omissions, including those described above. They engaged in a practice and course of business of immediately misappropriating Investors' funds by spending such funds on personal expenses of Sameer P. Sethi, P. Sethi (Sameer Sethi's father), and/or Shahnaz M. Sethi (Praveen Sethi's wife), among other insiders, and commingling such funds among Sameer P. Sethi's, P. Sethi's, and/or Shahnaz M. Sethi's accounts. The fraudulent practices employed by the Sethi Enterprises demonstrate that it constitutes an overall scheme or enterprise to defraud the Investors.

26.     Moreover, because the Sethi Enterprise was investing such a nominal amount of Investor money in the acquisition and development of mineral interests, the interests actually acquired never generated (nor ever had any hope of generating) sufficient revenue to cover the bloated operating expenses of the Sethi Enterprise and transfers to insiders.  Thus, the only way to maintain the fraudulent scheme was through the continued "sales" (i.e., fraudulent solicitation of new Investor money). Senior management of the Sethi Enterprise repeatedly acknowledged in internal documents that "sales" were the only source of income. At no time was the Sethi Enterprise balance sheet solvent or able to pay its debts as they came due without continual inflow of additional Investor money.

27.     Such fraudulent scheme was affected for the purpose of inducing the Investors to transfer funds to the Sethi Enterprise, so that the Sethi Enterprise could pocket the money for itself and its principals, their family, or others, and then perpetuate such scheme indefinitely. Although a very limited number of funds received by the Sethi Enterprise from the Investors were invested in oil and gas properties, such investments were inadequate to maintain a viable business and served only to maintain the façade that the Sethi Enterprise was carrying on a legitimate business enterprise. In fact, such investments were

made only to deceive Investors and conceal the fraudulent scheme of the Sethi Enterprise, so that the fraud could be perpetuated.

28.      Pursuant to the Receivership Order, all funds and/or interests in property of the Sethi Enterprise comprise the Receivership Estate, notwithstanding the fraudulent nature in which the Sethi Enterprise obtained such funds and/or interests in property.

29.      The Sethi Enterprise made certain transfers of its interest in property to various transferees, including P. Sethi, for little or no consideration. Any such transfer comprises property of the Receivership Estate.

**B.      P. Sethi's Participation in the Fraud.**

30.      P. Sethi was an active participant in, and facilitator of, the Sethi Enterprise's fraudulent scheme.

31.      P. Sethi was an officer, director, or person in control of the Sethi Enterprise.  As an officer, director, or person in control of the Sethi Enterprise, P. Sethi owed a fiduciary duty to the Investors and trade creditors doing business with the Sethi Enterprise.

32.      By facilitating the continuing fraudulent scheme of the Sethi Enterprise, P. Sethi breached that fiduciary duty, causing significant financial injury to Investors for the benefit of P. Sethi and other insiders of the Sethi Enterprise.

33.      Through P. Sethi's active involvement in the Sethi Enterprise, P. Sethi is complicit in the fraudulent conduct of the Sethi Enterprise.

34.      P. Sethi was issued business cards in the name of Sethi Petroleum that provided office telephone number, cell phone number, fax number, and a Sethi Petroleum email address for P. Sethi.

35.     P. Sethi was described as "Advisor and Strategic Counsel" to Sethi Petroleum in marketing materials Sethi Petroleum intended to be disseminated to brokers.

36.     P. Sethi made decisions on behalf of Sethi Petroleum in the settlement of litigation.

37.     P. Sethi made decisions regarding which employees of Sethi Petroleum would be provided health insurance.

38.     P. Sethi made decisions regarding the acquisition of assets on behalf of Sethi Petroleum.

39.     On May 8, 2015, P. Sethi testified under oath that he owns and controls Sethi Financial Group, Inc.

40.     P. Sethi was on the payroll of Sethi Petroleum.  Specifically, P. Sethi was paid a regular salary of $5,000 twice per month from the Sethi Enterprise.  In 2014, P. Sethi was paid at least $40,000 of regular salary from the Sethi Enterprise.  Between January 1, 2015 and June 4, 2015, P. Sethi was paid at least $25,000 of regular salary from the Sethi Enterprise.

41.     P. Sethi had authority to withdraw money from various bank accounts of the Sethi Enterprise, including:

- P. Sethi is a co-owner of Sethi Petroleum's checking account at Bank of America with account number that ends in 5759.

- P. Sethi is an authorized signatory of a checking account owned by Sethi North Dakota Drilling Fund at Bank of America with account number that ends in 4309.

- P. Sethi is listed as "Managing Member" of Sethi Petroleum on the signature card for a checking account of Sethi Petroleum at Bank of America with account number that ends in 1462.

42.     P. Sethi repeatedly withdrew large sums of cash from the Sethi Enterprise. Sometimes the funds withdrawn by P. Sethi were used to pay personal credit cards of P. Sethi and Shahnaz Sethi.  Other times, the funds withdrawn by P. Sethi were deposited into checking accounts owned by P. Sethi and Shahnaz Sethi.  Other times, the funds withdrawn by P. Sethi were deposited into the personal checking account of Sameer Sethi or used to pay personal credit cards of Sameer Sethi.

43.     Instances in which P. Sethi withdrew money from accounts owned by the Sethi Enterprise and used such money for the benefit of P. Sethi, Shahnaz Sethi, and Sameer Sethi include the following withdrawals from Sethi Petroleum's checking account at Bank of America with account number ending in 5759:

- P. Sethi withdrew $33,000 on December 10, 2014.  P. Sethi signed the withdrawal slip.  A corresponding payment was made on the same day in the same amount on a Bank of America Credit Card in the name of Sameer Sethi ending in account number 9305.

- P. Sethi withdrew $20,000 on December 10, 2014.  P. Sethi signed the withdrawal slip.  On December 11, 2014, $10,000 was deposited into Sameer Sethi's checking account at American National Bank with account number ending 4264, and $10,000 was deposited into P. Sethi's checking account at American National Bank with account number ending 7515.

- P. Sethi withdrew $26,000 on January 21, 2015.  P. Sethi's Texas driver's license was used for verification at the financial institution.  A corresponding payment was made on the same day in the same amount on a Bank of America Credit Card in the name of Sameer Sethi ending in account number 9305.

- P. Sethi withdrew $27,000 on January 21, 2015.  P. Sethi signed the account withdrawal slip.  A corresponding deposit was made in the same amount on January 23, 2015, into the personal checking account of Sameer Sethi at American National Bank with account number ending 7515.

- P. Sethi withdrew $45,000 on March 3, 2015.  P. Sethi signed the account withdrawal slip.  A corresponding payment was made in the same amount on the same day on a Bank of America Credit Card in the name of Sameer Sethi ending in account number 9305.

- From January 1, 2015 through April 30, 2015, P. Sethi signed at least thirty four (34) different checks drawn on this account.

44.   Another instance of money being withdrawn from an account owned by the Sethi Enterprise and deposited into an account owned by P. Sethi is:

- On Friday, September 5, 2014, a "teller transaction" (i.e., a transaction performed by a teller at a bank branch) occurred transferring $37,000 from Bank of America checking account ending 4309 owned by Sethi North Dakota Drilling Fund to Bank of America checking account ending 5759 owned by Sethi Petroleum.

- That same day, another "teller transaction" occurred withdrawing $37,000 from Bank of America checking account ending 5759 owned by Sethi Petroleum.

- On the next business day, Monday, September 8, 2014, (a) $25,000 was deposited into American National Bank checking account ending 7515 owned by Sameer Sethi, and (b) $12,000 was deposited into American National Bank checking account ending 4264 owned by P. Sethi.

## C.   Transfers to the Defendant

45.   Prior to the appointment of the Receiver, P. Sethi received the benefit of at least hundreds of thousands of dollars of withdrawals comprising hundreds of transfers from dozens of financial accounts owned or controlled by the Sethi Enterprise (at P. Sethi's that contained Investor money (the "**Transfers**").[3]

---

[3] Due to the Receiver's ongoing investigation of the intricate, pervasive fraudulent scheme orchestrated by P. Sethi, the details of each Transfer currently known by the Receiver and his professionals are still being developed. It is the intention of the Receiver to avoid and recover from P. Sethi each and every transfer of property from the Receivership Estate received by: (i) P. Sethi, (ii) any entity under the direction or control of P. Sethi, and (iii) any one or more of P. Sethi's family members and affiliates.  During the prosecution of this action, through discovery or otherwise, the Receiver may discover additional facts concerning the Transfers and reserves the right to amend this Complaint to include additional details on the Transfers.

46.     The Transfers include, but are not limited to, those detailed below.  Upon information and belief:

- Between July 2011 and September 2013, at least $323,000 was withdrawn from American National Bank checking account ending 7924 owned by Sethi Financial Group, Inc. and used to pay the personal American Express credit card ending 9-52003 owned by P. Sethi.  The American National Bank checking account ending 7924 owned by Sethi Financial Group, Inc. contained funds of Investors.

- Between August 2011 and October 2013, at least $100,000 was withdrawn from American National Bank checking account ending 7924 owned by Sethi Financial Group, Inc. and used to pay the personal Citi credit card ending 9505 owned by P. Sethi. The American National Bank checking account ending 7924 owned by Sethi Financial Group, Inc. contained funds of Investors.

- Between September 2013 and April 2015, P. Sethi received at least $150,000 from the following accounts: (a) Bank of America checking account ending 5759 owned by Sethi Petroleum, (b) American National Bank checking account ending 8641 owned by Bakken Patriot, (c) American National Bank checking account ending 7924 owned by Sethi Financial Group, Inc.  Each of those checking accounts contained funds of Investors.

47.     The money comprising each Transfer was property of the Sethi Enterprise because (a) the money came from a bank account owned by Sethi Petroleum and/or one of its parents, successors, affiliates, or subsidiaries, and into which only money owned by such entities was deposited; (b) the money came from a bank account (i) held in the name of Sethi Petroleum's alter ego, (ii) over which the Sethi Enterprise exercised control and dominion, or (iii) operated for the benefit of the Sethi Enterprise; or (c) the money deposited into the bank account owned by the Sethi Enterprise was commingled with other funds owned by the Sethi Enterprise. As property of the Sethi Enterprise, the money comprising each Transfer constitutes assets of the Receivership Estate.

48.     Each Transfer was made with actual intent to hinder, delay, or defraud the Sethi Enterprise and its existing and future creditors, including the Investors. Each Transfer was made in furtherance of an overall scheme to defraud Investors of the Sethi Enterprise. All funds were transferred through fraudulent conduct of the Sethi Enterprise.

49.     The Sethi Enterprise did not receive a reasonably equivalent value in exchange for each Transfer.

50.     At the time each Transfer was made, the Sethi Enterprise was engaged or was about to engage in a business or a transaction for which the remaining assets of the Sethi Enterprise were unreasonably small in relation to the business or transaction; and/or the Sethi Enterprise intended to incur, or believed or reasonably should have believed that the Sethi Enterprise would incur, debts beyond its ability to pay as they became due.

51.     The Sethi Enterprise was insolvent at the time each Transfer was made.

52.     P. Sethi is the immediate or mediate transferees of the Transfers.

**V.**
**COUNT 1**
**Avoidance, Preservation, and Return of Actual Fraudulent Transfers**

53.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

54.     The Sethi Enterprise is a debtor.

55.     The Investors are creditors of the Sethi Enterprise.

56.     The Transfers were made from property of the Sethi Enterprise.

57.     The Sethi Enterprise made each Transfer with actual intent to hinder, delay, or defraud its creditors. Such intent is evidenced by some or all of the following:

(a)  each Transfer was made to an insider of the Sethi Enterprise;

(b) the Sethi Enterprise retained possession or control of the property transferred after the Transfer;

(c) each Transfer was concealed;

(d) before each Transfer was made, the Sethi Enterprise had been sued or threatened with suit;

(e) each Transfer was all or substantially all of the assets of the Sethi Enterprise;

(f) the Sethi Enterprise absconded;

(g) the Sethi Enterprise removed or concealed assets;

(h) the value of the consideration received by the Sethi Enterprise was reasonably equivalent to the value of the asset transferred;

(i) the Sethi Enterprise was insolvent or became insolvent shortly after each Transfer was made;

(j) each Transfer occurred shortly before or shortly after a substantial debt was incurred;

(k) the Sethi Enterprise transferred the essential assets of the business to a lienor who transferred the assets to an insider of the Sethi Enterprise.

58.     The Transfers are fraudulent transfers in violation of TUFTA § 24.005(a)(1) and/or (b).

59.     P. Sethi is either the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee, or is a person for whose benefit the Transfers were made.

60.     As of the date of this Complaint, P. Sethi has not returned any of the Transfers to the Receivership Estate.

61.      Based upon the foregoing allegations stated in this Complaint, each Transfer is subject to avoidance pursuant to TUFTA §§ 24.005(a)(1), (b) and 24.008. The Receiver is entitled to a judgment (a) avoiding and preserving the Transfers for the

Receivership Estate; (b) directing that the Transfers be set aside; and (c) recovering the Transfers, or the value thereof, from P. Sethi for the benefit of the Receivership Estate.

**VI.**
**COUNT 2**
**Avoidance, Preservation, and Return of Constructive Fraudulent Transfers**

62.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

63.     The Transfers were made from the property of the Sethi Enterprise.

64.     The Sethi Enterprise and/or Sameer Sethi and/or P. Sethi, as applicable, made each Transfer without receiving a reasonably equivalent value in exchange for the Transfer, and the Sethi Enterprise was insolvent at the time the Transfer was made or became insolvent as a result of the Transfer.

65.     At the time each Transfer was made, the Sethi Enterprise was engaged or was about to engage in a business or a transaction for which the remaining assets of the Sethi Enterprise were unreasonably small in relation to the business or transaction; and/or the Sethi Enterprise intended to incur, or believed or reasonably should have believed that the Sethi Enterprise would incur, debts beyond its ability to pay as they became due.

66.     The Transfers are fraudulent transfers in violation of TUFTA §§ 24.006(a) and 24.005(a)(2).

67.     P. Sethi is either the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee, or is a person for whose benefit the Transfers were made.

68.     As of the date of this Complaint, P. Sethi has not returned any of the Transfers to the Receivership Estate.

69.     Based upon the foregoing allegations stated in this Complaint, each Transfer is subject to avoidance pursuant to TUFTA §§ 24.006(a), 24.005(a)(2), and 24.008. The Receiver is entitled to a judgment (a) avoiding and preserving the Transfers for the Receivership estate; (b) directing that the Transfers be set aside; and (c) recovering the Transfers, or the value thereof, from P. Sethi for the benefit of the Receivership Estate.

## VII.
## <u>COUNT 3</u>
### Breach of Fiduciary Duty

70.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

71.     Based upon the foregoing allegations stated in this Complaint, P. Sethi is liable for breach of fiduciary duty under Texas law.

72.     P. Sethi had a formal fiduciary relationship with the Sethi Enterprise because he was a corporate officer, director, or person in control of the Sethi Enterprise. As such, P. Sethi owed the Sethi Enterprise various fiduciary duties, including (a) the duty of loyalty and utmost good faith, (b) the duty of candor, (c) the duty to refrain from self-dealing, (d) the duty to act with integrity, (e) the duty of fair and honest dealing, (f) the duty of full disclosure, and (g) the duty not to usurp corporate opportunities for personal gain.

73.     P. Sethi breached each of the foregoing fiduciary duties to the Sethi Enterprise by, among other things, actively facilitating the fraud on Investors and misappropriation of money, transferring hundreds of thousands of dollars of Sethi Petroleum's funds to himself and/or the P. Sethi Entities, and failing to disclose to Sethi

Petroleum or the Investors the misrepresentations made to Investors, the misappropriation of money, or transfers to insiders.

74.     P. Sethi's breach resulted in injury to Investors and the Sethi Enterprise and benefit to himself. As a result of P. Sethi's conduct, Sethi Petroleum and its Investors were deprived of millions of dollars rightfully belonging to them.

75.     Based on the foregoing, P. Sethi is liable to the Sethi Enterprise for breaching his fiduciary duty.  The Receivership Estates, on behalf of Sethi Petroleum, is entitled to actual, compensatory and exemplary damages resulting from such breach.

## VIII.
## COUNT 4
### Common Law Fraud

76.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

77.     At P. Sethi's direction and control, the Sethi Enterprise lied to potential Investors about how the Sethi Enterprise intended to use the Investors' money.

78.     The lies were knowing, material, and deliberate.

79.     The lies were made with the intention that Investors would rely on them and invest money with the Sethi Enterprise.

80.     Investors did rely on those lies and sustained millions of dollars of financial injury as a direct result.

81.     At P. Sethi's direction and control, the Sethi Enterprise defrauded Investors by intentionally using Investor money to pay inflated overhead of the Sethi Enterprise and for personal gain by insiders of the Sethi Enterprise, including Sameer Sethi and P. Sethi.

82.     Based upon the foregoing and other allegations stated in this Complaint, P. Sethi is liable to Receivership Estates, on behalf of Sethi Petroleum, for fraud under Texas law.

83.     Through P. Sethi's active involvement in the Sethi Enterprise, P. Sethi is complicit in the fraudulent conduct of the Sethi Enterprise.

84.     P. Sethi facilitated the Sethi Enterprise's ability to continue operations, thus delaying the discovery of the fraudulent conduct and enabling additional Investors to be deceived.

85.     P. Sethi facilitated unauthorized misappropriations of Investor money for the benefit of insiders and to perpetuate the fraudulent scheme of the Sethi Enterprise.

86.     At the time P. Sethi directed the Sethi Enterprise to publish material (mis)representations to Investors, insiders of the Sethi Enterprise, including, without limitation, P. Sethi, knew such representations were false, or made the representations recklessly, as a positive assertion, and without knowledge of their truth.

87.     P. Sethi knew that Investor money was not being spent as was represented to Investors and participated in the spending of that money contrary to the representations made to Investors.

88.     Investors relied on the misrepresentations made by the Sethi Enterprise.

89.     The Receivership Estate, on behalf of Sethi Petroleum, is entitled to actual, compensatory and exemplary damages resulting from P. Sethi's fraud.

# IX.
## COUNT 5
### Fraud by Nondisclosure

90.     The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

91.     P. Sethi concealed from Investors the facts concerning the misappropriation of Investor money and that the representations to Investors were false.

92.     As a corporate officer, director, or person in control of the Sethi Enterprise, P. Sethi had a duty to disclose to the Investors that the representations to them about (a) the qualifications of Sethi Petroleum, (b) the returns they could expect to receive, (c) how the money they invested would be spent, and (d) how the money they invested actually was spent, were all false.

93.     The non-disclosed facts were material.

94.     P. Sethi knew Investors were ignorant to the facts, and the Investors did not have an equal opportunity to discover the facts.

95.     P. Sethi was deliberately silent when he had a duty to speak.

96.     By failing to disclose the facts to the Investors, P. Sethi intended to induce Investors to continue investing with the Sethi Enterprise and refrain from taking actions to recover their investments.

97.     Investors relied on P. Sethi's nondisclosure.

98.     Investors were injured as a result of acting without the knowledge of the facts which P. Sethi failed to disclose.

99.     The Receivership Estate, on behalf of Sethi Petroleum, is entitled to actual, compensatory and exemplary damages resulting from P. Sethi's fraud by nondisclosure.

## X.
## COUNT 6
### Recovery of Costs Under TUFTA § 24.013

100.    The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

101.    The Receiver had to retain attorneys to prepare, file, and prosecute this action, and he has incurred fees and expenses in connection therewith.

102.    TUFTA § 24.013 provides for the recovery of "costs and reasonable attorney's fees as are equitable and just."

103.    Based on the facts and circumstances surrounding the fraudulent acts described herein, it is equitable and just that the Receiver recover for his costs and reasonable attorney's fees. Accordingly, pursuant to TUFTA § 24.013 the Receiver seeks recovery of costs, including reasonable attorney's fees and expenses incurred by the Receiver in connection with the preparation and filing of all pleadings in this case and in prosecuting the same.

## XI.
## COUNT 7
### Constructive Trust

104.    The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint.

105.    Under Texas law, "whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through

undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of the subsequent holder." *Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 849 (Tex. App. – Fort Worth 1982, no writ) (emphasis omitted).

106.    Based on the fraudulent acts of the Sethi Enterprise and P. Sethi, including without limitation the transfers to P. Sethi and his affiliates, the Receiver is entitled to, and sues herein for, the imposition of a constructive trust over all assets now held in the name of (i) P. Sethi; (ii) any entity under the direction or control of P. Sethi, and (iii) any one or more of P. Sethi's family members and affiliates.

## XII.
## COUNT 8
### Reservation of Rights

107.    During this lawsuit, the Receiver may learn through discovery or otherwise of additional transfers or harms caused by P. Sethi (the "**Additional Actions**").

108.    The Receiver intends to avoid and recover all transfers in interest of the property of the Sethi Enterprise and to or for the benefit of P. Sethi or any other transferees and to assert all Additional Actions that may be brought against P. Sethi. The Receiver reserves his right to supplement and amend this Complaint, including, without limitation, the right to (a) further state/allege/aver information regarding the Transfers; (b) seek to recover additional transfers; (c) modify or revise the allegations or persons or

entities named herein; (d) allege additional defendants; (e) allege additional causes of action that may become known to the Receiver at any time during this lawsuit through discovery or otherwise, and for all such amendments to this Complaint to relate back to the original Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for an order of the Court:

A.   declaring that the Transfers are avoided and set aside as fraudulent transfers pursuant to the Texas Uniform Fraudulent Transfer Act;

B.   directing and ordering that any Transfer avoided pursuant to the Texas Uniform Fraudulent Transfer Act be preserved for the benefit of the Receivership Estate;

C.   directing and ordering P. Sethi, as recipient of an avoidable Transfer, or any immediate or mediate transferee thereof, turn over to the Receiver the full amount or value of the Transfers received by P. Sethi, or any immediate or mediate transferee of P. Sethi;

D.   awarding judgment against P. Sethi in the Receiver's favor in an amount equal to:

   (i) the full amount of the Transfers (and any other avoided transfers discovered after the date of this Complaint) made to P. Sethi or any of the P. Sethi Entities;

   (ii) pre-judgment interest at the maximum legal rate running from the time of the Transfers until the date of judgment herein;

   (iii) post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full; and

   (iv) attorney's fees and costs incurred by the Receiver in this suit;

E.   awarding judgment against P. Sethi for actual, compensatory and exemplary damages, where applicable, under causes of action for breach of fiduciary duty, fraud, and fraud by nondisclosure;

F.   imposing a constructive trust on all assets owned by (i) P. Sethi; (ii) any entity under the direction or control of P. Sethi, and (iii) any one or more of P. Sethi's family members and affiliates; and

G.   such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Dated: June 19, 2018

Respectfully Submitted,

*/s/ Thomas C. Scannell*
Thomas C. Scannell (TX 24070559)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Ave., Suite 1600
Dallas, Texas  75201
(214) 999 4667 (facsimile)
(214) 999 3000 (telephone)
tscannell@foley.com

**COUNSEL FOR THE RECEIVER,**
**MARCUS HELT**